# IN THE COURT OF APPEALS OF IOWA

No. 15-0130
Filed March 25, 2015

IN THE INTEREST OF A.L., L.R.,
and E.R.,
        Minor Children,

T.L., Mother,
        Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Mary Jane Sokolovske, Judge.

A mother appeals the termination of her parental rights to three children. **AFFIRMED.**

Amy M. Myres of Myres Law, Sioux City, for appellant.

Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney General, Patrick A. Jennings, County Attorney, and Dewey P. Sloan, Assistant County Attorney, for appellant.

Joseph W. Kertels, Sioux City, for father.

Molly Vakulskas-Joly of Vakulskas Law Firm P.C., Sioux City, attorney and guardian ad litem for minor children.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**BOWER, J.**

A mother, T.L., appeals[1] the termination of her parental rights to three children claiming (1) the juvenile court erred in denying her request for six more months to work towards reunification, (2) the juvenile court erred in denying her request for a guardianship because she made efforts to remedy the circumstances leading to the adjudication, (3) there is not clear and convincing evidence the children cannot be returned to her care, (4) termination is not in the best interests of the children, and (5) termination is detrimental to the children due to the closeness of her relationship with the children. We find T.L. failed to preserve error on her request for six more months to work towards reunification. We find there is clear and convincing evidence that grounds for termination exist under Iowa Code section 232.116(1)(f) (2013), termination of the mother's parental rights is in the children's best interests pursuant to section 232.116(2), and no consequential factor weighing against termination in section 232.116(3) requires a different conclusion. Accordingly, we affirm.

**I.    BACKGROUND FACTS AND PROCEEDINGS**

The children, E.R., L.R., A.L., were born in 2005, 2006, and 2009, respectively. The children first came to the attention of the Department of Human Services (DHS) in July of 2013, due to allegations A.L. had an infected toe and T.L had failed to seek appropriate medical care. Upon investigation by the DHS, it was discovered the three children were residing with an aunt and

---

[1] E.R.'s father's parental rights were terminated by the court and he does not appeal. L.R. and A.L.'s father's parental rights were terminated by the court and he does not appeal.

uncle. T.L. had placed the children with relatives in early June because she was homeless and unable to care for them.

An ex parte removal order was entered on August 15, 2013. The children were removed from their mother's custody due to her homelessness, lack of employment, unhealthy and abusive relationships, and lack of supervision.

A child in need of assistance (CINA) petition was filed on August 19, with a hearing on August 23. T.L. appeared at the hearing with counsel. T.L. resisted the CINA adjudication pursuant to Iowa Code sections 232.2(6)(b) and (n), but offered no resistance to the continued removal of the children. The juvenile court adjudicated the children CINA pursuant to Iowa Code sections 232.2(6)(b), (c)(2), and (n). The DHS retained custody of the children who remained with their aunt and uncle. The juvenile court ordered T.L. to make a written request to DHS for any services she believed were necessary to have the children returned to her.

A dispositional hearing was held on October 30, 2013. The court advised T.L. to engage in services to demonstrate stability in order to allow the children to return home. The court provided several steps for T.L. to take before the children could be returned. A family case plan set forth the following responsibilities for T.L.: finding and maintaining stable employment, finding stable housing, participation in a Family Team Meeting (FTM), work on parenting skills, and participate in mental health counseling. T.L. was again ordered to notify the DHS to request any services she believed were necessary.

A dispositional review hearing was held on March 12, 2014. The court found T.L. had made little progress towards reunification with the children. While

T.L. had secured employment and was actively seeking housing, the visits with the children remained supervised. T.L. occasionally attended visitations, but often cancelled or postponed the visits. When T.L. did attend visitations, the DHS noted, her presence had a negative effect on the children and their behavior deteriorated after she left. T.L.'s parenting was inconsistent and she needed constant redirection on proper parenting practices. In spite of this, the children continued to do well in their aunt and uncle's care. The court found it would be contrary to the best interests of the children to return them to T.L.'s care, ordered T.L. to continue adhering to the family case plan, and ordered her to notify the DHS to request any additional services.

A permanency/termination hearing was completed October 29, 2014, and the juvenile court issued an order terminating T.L.'s parental rights on January 6, 2015. In its order, the juvenile court reasoned:

> Prior to and subsequent to the removal and adjudication, [T.L.] was offered/received services to address her parenting issues, which included but were not limited to, Family Safety, Risk, and Permanency (FSRP) services from September 2013 to present in an effort to provide guidance in parenting, address emotional damage from prior episodes of domestic violence, maintain employment, cultivate healthy relationships with family members providing care for her children, encourage therapy attendance, secure housing and supervised visitation; a social history in an effort to compare circumstances and identify the sources of the parent's dysfunction as well as to develop a plan to address the problems identified in assessments, in interactions, and as noted by the parents themselves; family team meetings to gather personal and professional supports together to identify the parent's strengths and articulate concerns for the future of the children; and counseling at the Council on Sexual Assault & Domestic Violence to address co-dependency and domestic violence. [T.L.] has never requested any additional services to promote reunification.
> . . . .

Despite services offered/provided, [T.L.] has not been able or has been unwilling to stabilize her lifestyle. The circumstances leading to the adjudication and removal of the children continue to exist. [T.L.] has taken no affirmative action to assume her role as the children's mother. She had met no financial obligations, and has made no reasonable effort to complete the responsibilities of the case permanency plan. She has done nothing to maintain a place of importance in the children's lives. [T.L.] has been unable to meet her own needs, much less the needs of her children. These children would be imminently likely to suffer either physical abuse, neglect, or harm from a lack of supervision and their mother's ongoing inability to control her environment and emotional dysfunction/instability.

The juvenile court terminated T.L.'s parental rights pursuant to Iowa Code sections 232.116(1)(d) and (f). T.L. filed a timely appeal.

## II. PRESERVATION OF ERROR

The mother claims the juvenile court abused its discretion by denying her request for an additional six months to work toward reunification. In support of her claim, the mother cites to authority regarding the State's duty to provide the parent with reasonable reunification services. While "the State has the obligation to provide reasonable reunification services, the [parent] ha[s] the obligation to demand other, different, or additional services prior to the termination hearing." *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005). As a general rule, "if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). We find T.L. never requested services other than those provided prior to the termination hearing. Consequently, we find this issue not properly preserved for our review. *See id*; *In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994). Finally, the record shows the mother asked for

an additional six months to work toward reunification at the termination hearing. The court noted this issue in its opinion, but it did not provide a ruling on the issue. Since the mother did not file a motion to preserve error on this issue, this issue has not been preserved on appeal. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

## III. STANDARD OF REVIEW

Our review of termination decisions is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We give weight to the juvenile court's findings, especially assessing witness credibility, although we are not bound by them. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *Id.* Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *Id.*

## IV. DISCUSSION

Iowa Code chapter 232, concerning the termination of parental rights, follows a three-step analysis. *P.L.*, 778 N.W.2d at 39. The court must first determine whether a ground for termination under section 232.116(1) has been established. *Id.* If a ground for termination has been established, the court must apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights. *Id.* Finally,

if the statutory best-interest framework supports termination of parental rights, the court must consider if any of the statutory exceptions set out in section 232.116(3) weigh against the termination of parental rights. *Id.*

## A.     Grounds for Termination

When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground we find supported by the record. *D.W.*, 791 N.W.2d at 707. To terminate parental rights under section 232.116(1)(f), the State must show the child is four years of age or older, has been adjudicated a CINA, has been removed from the home for a requisite period of time, and the juvenile court could not return the child to the parent's custody at the present time pursuant to section 232.102. Iowa Code § 232.116(1)(f). The children are of the requisite age, have been adjudicated CINA, and have been removed from the mother's home for at least twelve of the last eighteen months. At issue is whether the State presented clear and convincing evidence the children could not be returned to the mother's care pursuant to section 232.102. Iowa Code § 232.116(1)(f)(4).

At the termination hearing, the juvenile court found the mother had not remedied the circumstances that caused the initial removal of her children, and therefore found the children could not be returned to their mother's care. We agree. The record shows the mother made some small positive strides towards reunification by securing a job and seeking housing. However, the State proved by clear and convincing evidence the children could not be returned to the

mother at the time of the termination hearing. The juvenile court highlighted the evidence in the record supporting termination:

> Throughout the life of this case, [T.L.] failed to consistently attend therapy, failed to locate safe and stable housing sufficient for herself and the children, failed to maintain stable employment, and failed to consistently attend visitations or call the children. [T.L.] did not begin taking parenting classes until April 2014. It is unknown what, if any, progress [T.L.] has made in her counseling at the Council on Sexual Assault & Domestic Violence as she failed to sign a release of information . . . . Evidence supports a finding that it would take months, if not years, for [T.L.] to demonstrate stability emotionally/mentally, in social interactions, financially, and housing; good judgment; independence; and appropriate parenting skills.

These children deserve stability in their lives and should not be forced to continue waiting for their mother to provide a proper home and be a responsible parent. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990). We find clear and convincing evidence supports the termination of the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) and affirm the judgment of the juvenile court.

### B.     Best Interests of the Child

Even if a statutory ground for termination is met, a decision to terminate must still be in the best interests of a child after a review of section 232.116(2). *P.L.*, 778 N.W.2d at 37. In determining the best interests of the child, we give primary consideration to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional conditions and needs of the child." *See* Iowa Code § 232.116(2).

T.L. claims the best interests of the children would be served by establishing a guardianship for the children. Given the amount of time the

children have been out of T.L.'s care and residing with their aunt and uncle in foster care, we agree with the juvenile court that a guardianship would serve no purpose. We agree with the juvenile court's conclusion it is in the children's best interests to terminate T.L.'s parental rights.

### C.      232.116(3) Exceptions

Finally, we must decide if any exceptions to termination exist under section 232.116(3). T.L. claims her parental rights should not be terminated because it would have a detrimental effect on the children due to the closeness of the parent-child relationship, and because the children are residing with relatives. *See id.* § 232.116(3) (a) and (c). For the reasons previously stated, we find there are no section 232.116(3) factors weighing against termination in this case.

## IV.      CONCLUSION

There is clear and convincing evidence that grounds for termination exist under section 232.116(1)(f), termination of the mother's parental rights is in the children's best interests pursuant to section 232.116(2), and no consequential factor weighing against termination in section 232.116(3) requires a different conclusion. Accordingly, we affirm termination of the mother's parental rights.

**AFFIRMED.**